## FRIAR *et al.* v. McGILBRAY.

No. 3804.   Opinion Filed February 16, 1915.

(146 Pac. 581.)

1. APPEAL AND ERROR—Findings—Evidence. Evidence examined and held to reasonably support the special findings of fact of the trial court.

2. ESTOPPEL—Declarations—Knowledge. In order that a person may be estopped by his declarations or conduct, he must have knowledge of the purpose of the inquiry, in response to which his statement was made, and of the interest of the person claiming the estoppel.

3. APPEAL AND ERROR—Case-Made—Correction. A judge of the district court, in settling a case-made for the Supreme Court, has the power, on his own motion, or at the suggestion of either party, and before signing such case-made, to make such alterations in the case-made, and such erasures and additions, as may be necessary to make the case-made speak the truth.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*

*S. V. O'Hare, Special Judge.*

Action by George McGilbray against G. C. Friar and others. Judgment for plaintiff, and defendants bring error. Affirmed.

F. L. Montgomery and Crump, Crump & Garrett, for plaintiffs in error.

*Bert E. Nussbaum, John B. Meserve* and *Clark J. Tisdel,* for defendant in error.

KANE, C. J. This was a suit in equity commenced by the defendant in error, George McGilbray, plaintiff below, against the plaintiffs in error, defendants below, for the purpose of canceling certain deeds purporting to convey to the defendants the title to certain lands belonging to the plaintiff, situated in Muskogee county. The allegations of the petition of the plaintiff are in effect, that the defendant Friar by fraud and misrepresentation induced the plaintiff to make, execute, and deliver to him a warranty deed for said premises, and that, with full notice of said fraud, the defendants Colter and Kuykendall purchased the premises from Friar. The other defendant, Reeves Realty Company, figures in the case only in a collateral way. That the deed from McGilbray to Friar was procured by fraud and misrepresentation seems to be conceded. The defendants Colter and Kuykendall contend, however, that they had no notice, either actual or constructive, of the fraud of Friar at the time they purchased the land from him, and therefore they are entitled to the status of innocent purchasers. Upon the cause coming on for trial, the regular judge of the district court being disqualified, Hon. S. V. O'Hare, a member of the bar was agreed upon by counsel as special judge, who made very full findings of fact, all in favor of the plaintiff, upon which a decree was entered canceling the deeds, as prayed for, to reverse which action this proceeding in error was commenced.

There are numerous assignments of error presented by counsel for the defendants in their petition in error; but, from a careful examination of their brief, it is apparent the grounds for a reversal for which they seriously contend may be summarized as follows: (1) Error in the findings of the court to the effect that the defendants Colter and Kuykendall purchased the land in controversy with notice, either actual or constructive,

of the fraud of their grantor; (2) that in addition to the fact that the defendant Kuykendall made every inquiry that a reasonably prudent person would or should have made, under the circumstances, the plaintiff, by his conduct, is estopped from setting up any claim to or interest in the land as against his deed; (3) it was error for the trial judge to change or modify his findings of fact after the term had expired at which the findings of fact were filed and the decree rendered.

The first ground for reversal questions the correctness of the findings of fact of the trial court, to the effect that Colter and Kuykendall, although they had notice of facts sufficient to charge a reasonably prudent person with knowledge of the fraud and misrepresentation of their grantor, exercised no diligence whatever in endeavoring to ascertain the true facts with reference to the transaction between McGilbray and Friar. Whilst the evidence on this point may not be so clear and convincing as to remove all doubt as to whether Colter and Kuykendall were innocent purchasers, the findings of the court on that point is not so clearly against the weight of the evidence as to justify this court in setting it aside. *Schock v. Fish, ante,* 144 Pac. 584. It seems to be conceded that there were facts and circumstances of a suspicious nature surrounding the transaction between McGilbray and Friar—and of which Colter and Kuykendall had notice—sufficient to put a prudent man upon inquiry. Of course, Colter and Kuykendall contend that they made such inquiry as could reasonably be expected of them. Upon this question, however, the trial court found against them, and, as there is evidence reasonably tending to support such findings, they will not be disturbed. *Freeman v. Eldridge,* 26 Okla. 601, 110 Pac. 1057.

The defendant Kuykendall alone seeks to invoke the doctrine of estoppel *in pais.* The facts out of which he claims the estoppel arose are stated by him in his testimony. It seems that, after becoming aware of certain circumstances which put him upon

inquiry as to the title of his grantor, he called upon the plaintiff, who was still residing upon the land, whereupon the following conversation, as to the exact facts surrounding the transaction between McGilbray and Friar, took place:

"* * * I went to Taft and went over to Uncle George's home, and he was there, and I asked him how much land he owned there, and he told me that he owned 20 acres, showed me where the 20 was that he had an orchard on it, showed me where he was going to build his house in the orchard, and I asked him about the 60 acres, 'the 20 where you are living and this 40,' and he said he had sold them to Friar, but he had it leased until December 1st. That was in March. I came back then and closed the deal with Mr. Friar and Mr. Colter."

We may assume, for the purpose of the question now under discussion, that this testimony was absolutely uncontradicted, and that the court below believed the same to be true, and yet it is not sufficient to constitute an estoppel *in pais*. The authorities cited by counsel for defendant support the doctrine that the owner of land may, by an act *in pais,* preclude himself from asserting his legal title; but they also show that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. *Trenton Banking Co. v. Duncan,* 86 N. Y. 221.

The rule governing an estoppel of this kind, as stated by Mr. Justice Field in the case of *Boggs v. Merced Mining Co.,* 14 Cal. 367, and the later case of *Martin v. Zellerbach,* 38 Cal. 300, 99 Am. Dec. 365, is as follows:

"* * * When invoked in respect to the title, to constitute an estoppel, it must appear: First, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission [by his declaration or conduct] with the express intention to decieve, or with such careless or culpable negligence as to amount to constructive fraud; third, that the other party was not

only destitute of all knowledge of the true state of the title, but of all convenient or ready means of acquiring such knowledge by the use of ordinary diligence; and, fourth, that he relied directly upon such admissions, and will be injured by allowing its truth to be disproved."

It is apparent at a glance that several very essential elements of an estoppel are wanting in the instant case. So far as the record discloses, the conversation between McGilbray and Kuykendall was merely casual, and the questions asked concerning the land were more likely to be prompted by friendly interest or even idle curiosity than by any serious purpose on the part of Mr. Kuykendall to become a purchaser thereof.

It seems to us that McGilbray in some way should have been made aware of the important transaction which was in the mind of Mr. Kuykendall at the time he was talking with him, and that the safety of others depended upon his answers to the questions propounded to him. As was said in another case:

"We think that the old doctrine that estoppels are odious might very justly be applied to one of this character, which one is to be made to incur, covertly, and, so to speak, by * * * a sleight of hand." (*Wooley v. Chamberlain*, 24 Vt. 270).

The rule applicable to the situation herein presented is stated in Cyc. (16 Cyc. 732) as follows:

"In order that a person may be estopped by his declarations or conduct, he must have knowledge of the purpose of the inquiry, in response to which his statement was made and if the interest of the person claiming the estoppel."

Other cases to the same effect are *Cravens v. Kitts*, 64 Ind. 581; *Durant v. Pratt*, 55 Vt. 270.

The next assignment of error is predicated upon the following situation: When the case-made was presented to the special judge to settle and sign, counsel for defendant in error invited his atten-

tion to the fact that certain of his findings were inconsistent with his general findings in the case, and thereupon the court stated that the record did not speak the truth with reference to his intention, whereupon he added a page thereto for the purpose of correcting the same. We think this was entirely proper. If the record did not speak the truth, it was the duty of the judge, to whom the case-made was presented for signing and settling, to make such corrections as would accomplish this purpose. The matter was still within the jurisdiction of the special judge.

"The term of office of a judge *pro tempore,* where no time is fixed by settling a case, is  *  *  *  coextensive with the time allowed for suggesting amendments, and therefore cannot expire before the time fixed for making the case." *Butler v. Scott,* 68 Kan. 512, 75 Pac. 496; *City of Shawnee v. State Pub. Co.,* 33 Okla. 363, 125 Pac. 462, 42 L. R. A. (N. S.) 616.

It has been held that a judge of the district court, in settling a case-made for the Supreme Court, has the power, on his own motion, or at the suggestion of either party, and before signing such case-made, to make such alterations in the case-made and such erasures and additions as may be necessary to make the case-made speak the truth. *Building Association v. Beebe,* 24 Kan. 365; *Hammerslough v. Hackett,* 30 Kan. 61, 1 Pac. 41.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.