## McDOUGAL v. KERSEY, Adm'r, and KERSEY, Adm'r, v. McDOUGAL.

No. 12756—Opinion Filed April 1, 1924.

Rehearing Denied May 5, 1925.

(Syllabus.)

**1. Guardian and Ward—Management of Estate — Investment of Funds without Court Order.**

Under chapter 5, art. 14, Comp. Stat. 1921, a guardian of the estate of a minor ward is given authority to manage the estate of his ward according to his best judgment, and charged with the duty of frugally managing same without waste, and under Yawitz v. Hopkins, 70 Okla. 158, 174 Pac. 257, a guardian may invest the funds of his ward according to his best judgment as to the minor's interest, without the order of the county court to do so.

**2. Same—Validity of Guardian's Acts— Disqualified County Judge.**

Where the appointment of a guardian is

valid in all respects, then his acts done within the scope of his authority under the law are valid, regardless of whether or not the county judge afterward became disqualified to act in matters pertaining to such guardianship.

**3. Appeal and Error—Review of Guardianship Case—Trial De Novo in District Court.**

Under the provisions of chapter 5, art. 13, Comp. Stat. 1921, an appeal from the judgment of the county court upon matters pertaining to guardianship, upon both questions of law and fact, gives the district court jurisdiction in a trial de novo to pass upon every phase of fact and law pertaining to such guardianship, and where the judgment of the district court is sustained by the law and by the facts in the record, such judgment will be affirmed.

Error from District Court, Tulsa County; Owen Owen, Judge.

In the matter of the estate of Robert Pitman, Jr., deceased. Final report of D. A. McDougal, formerly guardian; protest by E. Kersey, admin strator. From judgment of district court upon appeal from county court, both parties bring error. Affirmed.

Biddison & Campbell, L. O. Lytle, W. V. Pryor, and Sam T. Allen, for plaintiff in error.

Davidson & Williams and Foreman & Simms, for defendant in error.

HARRISON, J. This is an appeal by both parties to the action from a judgment of the district court, modifying the judgment of the county court on the final report of a minor's guardian. D. A. McDougal was guardian and Robert Pitman, Jr., a minor, was the ward, and E. Kersey was administrator.

The minor died before attaining majority, and before the approval of the final report of D. A. McDougal, as guardian, and E. Kersey had been appointed administrator of the estate of the deceased minor.

At the hearing of the final report of the guardian to the county court, the administrator, Kersey, appeared and objected and protested against the confirmation of the guardian's final report and appealed from the order and judgment of the county court, upon said guardian's final report, to the district court, in which a hearing was had, and under section 1424, Comp. Stat. 1921, a trial de novo, upon both questions of law and fact, and judgment in such de novo trial rendered by the district court upon the final report of the guardian, McDougal, and upon all previous and intermediate reports made by him to the county court.

From such judgment of the district court both the guardian, McDougal, and the administrator, Kersey, have prosecuted an appeal to this court, and the two appeals have been consolidated, and are presented in one case; McDougal, the guardian, contending that the district court erred in not either affirming the judgment of the county court or rendering like judgment, and the administrator, Kersey, contending that both the district and county court erred in not surcharging the guardian, McDougal, with certain items with which both the county court and district court refused to surcharge him.

The foundation ground of Kersey's, the administrator's, contention is that the county judge, whose name was N. J. Gubser, was disqualified to act as county judge in such matter for the reason that he was indebted to the estate of the minor and therefore all orders made and judgments rendered by said county judge in matters pertaining to said guardianship were null and void. A great portion of the administrator's brief is devoted to a discussion of this question, and a great many authorities cited in support of the contention that all orders made by a judge disqualified because of an interest in the controversy are void.

Though this court accede to the authorities cited on the question and adhere to the high moral philosophy which permeates some of the authorities cited, and though we concede as well taken the contention of the administrator that a judge who has a pecuniary interest in a controversy should not sit in judgment of same, that a judge should not sit in judgment in a trial of his own case, yet this doctrine is not decisive of the case at bar.

There is no denial that the county judge, N. J. Gubser, was in every way qualified to act in this guardianship at the time McDougal was appointed as guardian; the county judge was not indebted to the minor's estate at the time McDougal was appointed, and did not become so until some time after McDougal's appointment as guardian, therefore the appointment of McDougal, so far as the record shows, was legal and valid in all respects: in fact, it appears from the record that McDougal was nominated for such guardianship by the father of the minor and was acceptable to him; that upon such nomination by the father of the minor, the county judge appointed McDougal as guardian; no objection nor protest being filed against such appointment nor appeal taken from same, the appointment thereby became valid and binding. McDougal remained as such guardian after such appointment from November 10, 1909, until Novem-

ber 10, 1914, at which time he was removed as such guardian.

Some time between the time of his appointment and the date of his removal, the guardian purchased a note, which had been given by the county judge to a third party, with funds of the minor, thereby rendering the county judge indebted to the minor's estate, and thereby, as Kersey, the administrator, contends, rendering such county judge disqualified to act in any matters pertaining to such guardianship.

Conceding for argument's sake that the county judge was disqualified after he became indebted to the estate, the district court was qualified; at least, there is no contention made as to his disqualification; and having acquired jurisdiction of the entire subject-matter by appeal upon both questions of law and fact, and having tried all questions of law and fact involved in the controversy as though it had been originally brought in the district court as provided in chapter 5, art. 13, Comp. Stat. 1921, it is immaterial to this court, and immaterial whether the county court was disqualified or not, so far as the guardian's acts are involved—the guardian having been legally appointed in the first place, and having authority under chapter 5, art. 13, supra, to do every act complained of herein, without obtaining authority to do so by order of the county court—there were no acts of the guardian complained of in the trial court, nor are there any complained of here, but which the guardian had authority to do without an order from the county court, and none but which the district court had jurisdiction to try and determine, and this being an appeal from the judgment of the district court, it is immaterial to this court whether or not the county court had jurisdiction to authorize the guardian to do the things complained of by the administrator. To illustrate further, this appeal from the county court to the district court being on both questions of law and fact, had the only question of law involved in the case been the disqualification of the county judge because of interest in the estate, and had the district court held specifically that the county court had no jurisdiction and that his orders were void for lack of jurisdiction, yet under section 1424, Comp. Stat. 1921, the district court had authority and it was his duty to consider and decide every phase of the guardianship involved in the case from beginning to end, from the issuance of letters of guardianship to the final report. This was done in the case at bar and both appeals herein are from the judgment of the district court, not from the judgment of the county court. Therefore the judgment of the county court is eliminated from this case and our investigation shall be to determine whether the district court has committed reversible error in its judgment.

As heretofore suggested, there is no act of the guardian complained of or definitely pointed out to this court but what he would have had authority to do without an order of the county court.

Under section 1455, Comp. Stat. 1921, the guardian is given authority to manage the estate of his ward and charged with the duty of frugally managing same without waste.

Under sections 1468 and 1469, Id., the guardian is authorized to put out at interest any surplus income of the ward over and above his necessary keeping and to invest same according to his best judgment. And in Yawitz v. Hopkins, 70 Okla. 158, 174 Pac. 257, it was held by this court in the body of the opinion:

"Under this section (6556, Rev. Laws 1910, which is 1469, Comp. Stat. 1921) of the statute it would not be necessary for the guardian to procure an order of the court directing him to invest the funds of his ward. * * *"

The difference being that if a guardian obtains a valid order from the county court to make a specific investment, then he and his bondsmen are protected against the result of such investment, but if he makes such investment upon his own judgment, without an order of the county court, then he does it at his own peril and he and his bondsmen may be held responsible for fraudulent investments.

In the case at bar no investments are pointed out as having been made by the guardian which he would not have had authority to make without the purported order of the county court to do so, hence the district court had jurisdiction in the trial de novo to determine the validity of every act of the guardian during the course of his guardianship, and to determine his liability for such acts.

Keeping in mind that both these appeals are from the judgment of the district court, we look to the journal entry of such judgment to ascertain what was done and determine thereby whether error was committed.

The journal entry of the judgment of the district court contains the following recital:

"Now on this 12th day of May, 1921, the court renders its judgment. The court expressly finds that there is no fraud perpetrated by the former guardian, D. A. McDou-

gal, as charged in the exceptions filed by the present guardian, and exonerates the said guardian from any such charges."

In our judgment the foregoing finding and conclusion of the trial court is supported by the evidence, and thus becomes a settled question with this court.

The journal entry contains the further recital:

"The court further finds that all of the exceptions filed in the guardian's final report and intermediate reports should be overruled, with the following exceptions."

From an examination of the record it is our opinion that the foregoing finding and conclusion is sufficiently supported by the evidence, and we feel bound thereby.

But the journal entry of said judgment contains the further recital, to wit:

"That the said former guardian, D. A. McDougal, claims for compensation, as follows, should be disallowed, and his report should be surcharged with the said amounts:

| | |
|---|---|
| Nov. 10, 1909, to Nov. 10, 1910 | $3,130.25 |
| Nov. 10, 1910, to May 10, 1911 | 1,641.38 |
| May 10, 1911, to Nov. 10, 1911 | 1,890.96 |
| Nov. 10, 1911, to May 10, 1912 | 1,948.23 |
| May 10, 1912, to Nov. 10, 1912 | 1,970.00 |
| Nov. 10, 1912, to May 10, 1913 | 1,500.00 |
| May 10, 1913, to Nov. 10, 1913 | 1,553.35 |
| Total | $13,614.17 |

"To the items of expense allowed by order of the county court, said order being of date the 21st day of December, 1911, and said item of expense being for expenses incurred in what is known as the Colorado investigation, amounting to $1,601.88, should be disallowed and the guardian's report surcharged therewith.

"The court further finds that the sum of $8,250 and amount of attorney's fees claimed by Thompson & Smith, for their services rendered to the estate under the employment and at the instance of the guardian during the period covered by the term of the guardianship of D. A. McDougal is a reasonable compensation for their services, and that the same should be allowed.

"The court further finds that the former guardian, D. A. McDougal, is entitled to attorney's fees in the sum of $3,000 for legal services rendered to him in his defense to the exceptions filed to his final report and intermediate reports.

"It is Therefore Ordered and Adjudged that all of the exceptions and objections to the findings on the final report and intermediate reports of D. A. McDougal be and the same are hereby overruled, with the exceptions hereafter noted; to each order and judgment of the court the administrator, E. Kersey, excepts.

"It is Therefore Ordered, Adjudged, and

Decreed by the court that the sum of $8,250 is hereby allowed and adjudged against the estate of the ward in behalf of Thompson & Smith for their attorney's fees, according to the finding set forth herein; and that a further sum of $3,000 is allowed and hereby adjudged in favor of the attorneys of D. A. McDougal for their services rendered to him in making his defense to the exceptions according to the finding heretofore set out herein.

"It is Further Ordered and Decreed that the said guardian's account should be surcharged with the sum of $15,216.05, the same being compensation allowed the guardian, and the Colorado expenses, amounting to $1,601.88, to which the former guardian, D. A. McDougal, excepts, and announces in open court his intention to appeal from said judgment to the Supreme Court of Oklahoma, which announcement is entered of record by the clerk in open court on the trial docket of the court, and to each finding of fact against the plaintiff and for defendant McDougal, and to so much of the judgment as allows the defendant McDougal anything whatever, or any credit whatever, and allows to his attorneys or any of them any fees whatever and refuses the plaintiff the entire relief sought by him, the plaintiff excepts, and in open court gives notice of appeal to the Supreme Court of Oklahoma, and asks that said notice be entered of record on the trial docket of this court, and said notice was accordingly entered.

"(Signed) Owen Owen, Judge."

We note in the last paragraph of the foregoing order and decree the following language, to wit:

"It is Further Ordered and Decreed that the said guardian's account should be surcharged with the sum of $15,216.05 the same being compensation allowed the guardian, and the Colorado expenses, amounting to $1,601.88."

That is, the foregoing is construed to mean that the guardian was surcharged with all the compensation which had been allowed to him as guardian, amounting to $13,614.17, and that he was also surcharged with the expense of the Colorado investigation, amounting to $1,601.88, making a total of $15,216.05, with which the trial court surcharged the guardian.

As to the item of $1,601.88 in the Colorado investigation, it is our opinion that the record supports the court's decree in this regard and that the guardian should be surcharged with said amount.

As to whether the guardian was entitled to any compensation for his services as guardian from November 10, 1909, to November 10, 1913, depends upon the statute,

the services rendered by the guardian, and somewhat upon the value of the estate and somewhat also upon the conduct of the guardian.

It appears from the record that the estate amounted to from $250,000 to over $300,000, and it appears from the record and briefs that the management of said estate required a great portion of the guardian's time, and that he devoted a great portion of his time to the management of such estate. That there was a number of lawsuits occurring during the period of McDougal's guardianship, which required his time and attention in order in his best judgment to properly protect the interest of the minor.

It also appears from the trial court's finding and conclusion as above set out that the guardian was free of any fraud in the management of such estate and that he was by the court specifically exonerated from the charge of fraud.

It appears, further, that there was no specific finding that the estate had lost any money by any unintentional wrong or mismanagement of the funds of the estate, and no reason is given by the trial judge for denying all compensation to the guardian, and surcharging him with such compensation as had been allowed him by the county court.

Under all these circumstances, bearing in mind section 1463, Comp. Stat. 1921, which reads as follows:

"Every guardian must be allowed the amount of his reasonable expenses incurred in the execution of his trust, and he must also have such compensation for his services as the court in which his accounts are settled deems just and reasonable."

—we are unable to see why the trial court denied all compensation and surcharged the guardian with all compensation which had been allowed him by the county court.

But as there is a presumption in favor of both the correctness and reasonableness of the judgment of the district court, and inasmuch as there are no specific reasons pointed out wherein it is either unreasonable or erroneous in law, we feel no justification for modifying the judgment of the district court in this regard, nor for reversing it because of such conclusion.

The judgment is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.